THOMPSON v. THOMPSON.

1. DIVORCE — EXTREME CRUELTY — FAILURE TO PROVIDE SEPARATE HOME.

Where, in a suit by the wife for a divorce on the ground of extreme cruelty, the evidence shows that defendant took plaintiff to the home of his mother, who subjected her to attacks of the most bitter and abusive character, that he failed to provide a separate home for her, and for two months absented himself from her and their child, the decree for divorce will not be disturbed.

2. SAME—ALIMONY—EXCESSIVE AMOUNT.

Where, in fixing the amount of alimony, the court in computing the value of defendant's property at $2,700 used the highest figures given by any witness thereon,' and plaintiff had no share in its accumulation, she having lived with him less than two months, the decree for $900 will be reduced to $500.

Appeal from Hillsdale; Chester, J. Submitted January 16, 1919. (Docket No. 51.) Decided April 3, 1919.

Bill by Iva Thompson against Clarence Thompson for a divorce. From a decree for plaintiff, defendant appeals. Modified, and affirmed.

*B. D. Chandler,* for plaintiff.

*Paul W. Chase* and *Merton Fitzpatrick,* for defendant.

Plaintiff and defendant at the time of their marriage on December 8, 1915, were each about 23 years of age. Plaintiff is the daughter of a farmer and defendant is a farmer, their respective places being about two miles distant from each other. Defendant's father is dead and defendant together with one of

See notes in 13 L. R. A. (N. S.) 222; 18 L. R. A. (N. S.) 305; 34 L. R. A. (N. S.) 360, 759; L. R. A. 1915E, 161.

his brothers purchased from the administrator of his father's estate a 100-acre farm upon which his brother lived. Defendant at the time of the marriage lived with his mother in a house belonging to her near the farm he owned jointly with his brother. It is in evidence that the parties had known each other for some five years prior to the marriage and had been engaged to be married for upwards of one year. A child was born to the union on January 22, 1916. The record shows that the marriage had been set for a date nearly a year before it actually took place, but because of some differences which arose was not then consummated. Some time after the date first set for the marriage the parties became sexually intimate and as a result the plaintiff became enceinte. Plaintiff's condition becoming apparent to her father he interviewed defendant and urged him to make such tardy reparation as was possible to his daughter through a belated marriage. After two or three interviews the father's importunity bore fruit and the parties were married on the date above specified. They spent the night of their wedding day with plaintiff's parents and on the next day defendant took plaintiff to the home of his mother.

A perusal of this record convinces us that the treatment accorded the plaintiff by defendant's mother was abusive and contumelious in the highest degree. In effect defendant's mother charged plaintiff with being a prostitute, ordered her from her home and asserted that no Stiverson (that being plaintiff's maiden name) should ever enter her house. After a three days' sojourn plaintiff's position in the household of her husband's mother became so intolerable that she insisted upon returning to the home of her parents where she remained a few days. On two other occasions between the date of the marriage and the birth of her child plaintiff at the solicitation of her husband went to

live in his mother's house, but was accorded no better treatment than upon the first attempt. She lived with her husband in his mother's house for about a week prior to the birth of her baby during a time when the mother was absent, with fair tranquillity. Being advised of the imminent approach of maternity, the husband, at her request, took her to her mother's home on the morning of January 22d, where the baby was born two or three hours later. Thereafter during her confinement in bed as the result of parturition defendant visited her nearly every evening. It is in evidence that the husband insisted that she should return with him to his mother's home, but after the treatment she had received the wife steadily refused to accede to his demands and urged him to secure a home apart from that of his mother. Shortly after plaintiff was able to be about her mother told defendant that if he could not take proper care of her daughter she did not desire to have him come to see her.

"I told him we had one young one by him and we didn't want another one."

Thereafter and for a period of approximately two months defendant absented himself entirely from his wife and child, made no effort to see them, to provide them with the necessaries of life or to arrange a home for them apart from that of his mother. Plaintiff's bill was filed on March 24th. Immediately upon service of the process upon him defendant sought a conference with plaintiff and tried to induce her to return to him, stating that he had a paper from his mother to the effect that if she and his wife could not get along together she, the mother, would leave. Plaintiff refused to undertake a further experiment in the desired direction and the case proceeded to a hearing in open court after which a decree of divorce was granted plaintiff with permanent alimony in the sum of $900,

the custody of the infant child and the sum of $2.50 per week for the support of the child. Defendant has appealed and in this court urges that the court below was in error,—

*First.* In granting a decree upon the ground of extreme cruelty, and

*Second.* In fixing the amount of permanent alimony at so high a figure.

BROOKE, J. (*after stating the facts*). It is impossible to define with accuracy the exact meaning of the term "extreme cruelty" as used in the statute which provides for divorce upon that, among other grounds. We have, however, held that when a husband imputes a lack of chastity to his wife, she being a woman of character, education, and refinement, a case for divorce on the ground of extreme cruelty is made out. In the case at bar the evidence shows that the defendant husband aside from his insistence that his wife should live with him in the home of his mother and there be subjected to attacks of the most bitter and abusive character from his mother, treated his wife, the plaintiff, with uniform kindness. Plaintiff's position in the house of her husband's mother was one of extreme delicacy. Her earlier indiscretion had rendered her peculiarly vulnerable to attack. Ordinarily it is the duty of the wife to follow the husband to such a home as he may choose or may be able reasonably to provide, and his refusal or inability to provide a home commensurate with the ideas of comfort and luxury entertained by his wife is not "extreme cruelty" and constitutes no ground for divorce. It is in evidence that there was no vacant house available for defendant's use within two miles of the farm where he worked and that it was impossible for him to carry on his work successfully from such a distance, and it is urged in his behalf that his failure to comply with plaintiff's demands should not be taken as evidence of

his lack of interest in her welfare and much less should it be construed as such an act of extreme cruelty as would warrant a decree of divorce. The case is one of peculiar hardship. Defendant's mother though in the court room during the hearing did not take the stand to deny the accusations made against her by plaintiff. The learned circuit judge who saw and heard the witnesses readily granted the relief prayed. We have concluded, though with some hesitation, not to disturb the decree in this regard.

The court found defendant's net worth to be approximately the sum of $2,700 and awarded the plaintiff $900 as permanent alimony. He likewise allowed the sum of $100 for attorney's fees. Defendant's assets consist of a one-half interest in the farm, quite heavily mortgaged, and a one-third interest in the personal property used upon the farm. In computing their value the court used the highest figures given by any witness thereon. We think the allowance too high. It should be remembered that plaintiff has had no share in the accumulation of defendant's property and that she lived with him as a wife less than two months. True, she has borne his child but the decree provides for a contribution from the defendant for its support which provision as circumstances alter may, in the discretion of the court, be enlarged. All things considered, we believe that an allowance of $500 as permanent alimony is equitable. The allowance for attorney's fees will stand as made, and neither party will recover costs in this court.

As so modified, the decree will stand affirmed.

Bird, C. J., and Moore, Steere, Fellows, Stone, and Kuhn, JJ., concurred. Ostrander, J., did not sit.